IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL SIEGEL and REBECCA SIEGEL, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 06 C 0035 |
| SHELL OIL COMPANY, a Delaware corporation, BP CORPORATION NORTH AMERICA, INC., an Indiana corporation, CITGO PETROLEUM CORPORATION, a Delaware corporation, MARATHON OIL COMPANY, an Ohio corporation, and EXXON MOBIL CORPORATION, a New Jersey corporation, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

In their Amended Complaint, Plaintiffs Michael and Rebecca Siegel allege that Defendants Shell Oil Company, BP Corporation North America, Inc., Citgo Petroleum Corporation, Marathon Oil Company, and Exxon Mobil Corporation are liable under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et. seq.*, and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/2, for deceptive and unfair practices (Counts I and II), unjust enrichment (Count III), and civil conspiracy (Count IV). Plaintiffs also allege that Defendants are liable to the purported nationwide class members under the consumer fraud statutes and common law of various other states. Before the Court is Plaintiffs' Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23. For the following reasons, the Court, in its discretion, denies Plaintiffs' motion.

# BACKGROUND

Plaintiffs allege that Defendants dominate the market for gasoline in the United States and control a substantial portion of the nation's gasoline supply. Specifically, Plaintiffs allege that Defendants have used their market dominance to increase the price of gasoline to consumers by (1) controlling inventory, production, and exports, (2) limiting supply, (3) restricting purchase, (4) using "zone pricing," (5) falsely advertising the scarceness of gasoline, and (6) excessively marking up the price between gasoline and crude oil prices.

Plaintiffs seek to certify a nationwide class, and define the proposed class as follows: "All purchasers who made retail purchases of any Defendants' branded gasoline throughout the United States between December 2002 and the date of judgment in this lawsuit." Plaintiffs seek to pursue the following state-law causes of action:

1. A national (including the District of Columbia) unjust enrichment class sounding in tort;

2. A national (including the District of Columbia) unjust enrichment class sounding in quasi-contract;

3. A 45-state (and the District of Columbia) deceptive practices by omissions class;

4. A 21-state unfairness class, including a 5-state subclass pursuant to recovery under so-called "excessive price" statutes or regulations;

5. An 11-state class based upon Defendants' unconscionable conduct; and

6. A national (including the District of Columbia) civil conspiracy class.[1]

# LEGAL STANDARD

Federal Rule of Civil Procedure 23(a) states that "[o]ne or more members of a class may

---

[1] Plaintiffs' claims under 3, 4, and 5 pertain to various states' consumer fraud statutes.

sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a); *Oshana v. Coca-Cola Co.,* 472 F.3d 506, 513 (7th Cir. 2006). Failure to meet any of these Rule 23(a) requirements precludes class certification. *See id.*; *see also Pruitt v. City of Chicago,* 472 F.3d 925, 926-27 (7th Cir. 2006).

In addition to satisfying the requirements under Rule 23(a), a party seeking class certification must also establish that the proposed class satisfies one of the requirements set forth in Rule 23(b). *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Oshana*, 472 F.3d at 513. In this case, Plaintiffs request certification of the proposed class pursuant to Rule 23(b)(3), which applies when "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3); *see also Amchem Prods.*, 521 U.S. at 615-16. Rule 23(b)(3) includes a list of factors for courts to consider regarding the predominance and superiority criteria:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) ***the difficulties likely to be encountered in the management of a class action.***

*Amchem Prods, Inc.,* 521 U.S. at 615-16 (emphasis added); *see also Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 164, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (manageability requirement

"encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit.").

The party seeking class certification has the burden of establishing that certification is proper. *See Oshana,* 472 F.3d at 513; *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir. 1993). In determining whether a party has carried that burden, a court need not accept all of the complaint's allegations as true. *See Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). Rather, in deciding whether to certify a class, the court "should make whatever factual and legal inquiries [that] are necessary under Rule 23." *Id.* at 676. Finally, district courts have broad discretion in determining motions for class certification. *See Reiter v. Sonotone Corp.,* 442 U.S. 330, 345, 99 S.Ct. 2326, 2334, 60 L.Ed.2d 931 (1979); *Payton v. County of Carroll,* 473 F.3d 845, 847 (7th Cir. 2007).

## ANALYSIS

Because Plaintiffs seek to certify a multi-state class, the Court turns to controlling choice-of-law principles because class actions are improper unless all litigants are governed by the same legal rules – otherwise the class representative cannot meet his burden of satisfying the commonality, superiority, and predominance requirements under Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3). *See In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002); *Nagel v. ADM Investor Servs., Inc.*, 217 F.3d 436, 443 (7th Cir. 2000). When a class representative proposes to certify a class to pursue state-law claims, a court must ensure that its choice of state law "is not arbitrary or unfair." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 814-16, 105 S. Ct. 2965, 86 L.Ed.2d 628 (1985). In *Shutts*, the Supreme Court reviewed a Kansas state court's decision to "appl[y] Kansas contract and Kansas equity law to every claim

4

in [the multi-state class action], notwithstanding that over 99% of the gas leases and some 97% of the plaintiffs in the case had no apparent connection to the State of Kansas except for this lawsuit." *Id.* The Supreme Court rejected such a broad-brush application of Kansas law:

> The issue of personal jurisdiction over plaintiffs in a class action is entirely distinct from the question of the constitutional limitations on choice of law; the latter calculus is not altered by the fact that it may be more difficult or more burdensome to comply with the constitutional limitations because of the large number of transactions which the State proposes to adjudicate and which have little connection with the forum.
>
> Kansas must have a "significant contact or significant aggregation of contacts" to the claims asserted by each member of the plaintiff class, contacts "creating state interests," in order to ensure that the choice of Kansas law is not arbitrary or unfair. Given Kansas' lack of "interest" in claims unrelated to that State, and the substantive conflict with jurisdictions such as Texas, we conclude that application of Kansas law to every claim in this case is sufficiently arbitrary and unfair as to exceed constitutional limits.

*Shutts,* 472 U.S. at 821-22. Consistent with *Shutts*, the first step in determining whether a multi-state class may be certified is to determine whether the proposed state's law "conflicts in any material way with any other law which could apply. There can be no injury in applying [a state's] law if it is not in conflict with that of any other jurisdiction connected to this suit." 472 U.S. at 816; *see also Castano v. American Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996) ("A district court's duty to determine whether the plaintiff has borne its burden on class certification requires that a court consider variations in state law when a class action involves multiple jurisdictions."). It is well-established under Seventh Circuit case law, however, that if the states' laws differ, class certification is improper. *In re Bridgestone/Firestone, Inc.*, 288 F.3d at 1015 ("No class action is proper unless all litigants are governed by the same legal rules."); *see also Castano*, 84 F.3d at 741 ("In a multi-state class action, variations in state law may swamp any common issues and defeat predominance.").

Anticipating this hurdle, Plaintiffs argue that there is no need to engage in a choice-of-law analysis because there are no material variations in the state common law of unjust enrichment or consumer fraud, and submit a chart purporting to summarize this unanimity. (R. 291-1, Pl.'s Mem. at 15 ("As illustrated on the chart Plaintiff has attached hereto . . . Plaintiff has identified no outcome determinative conflicts between Illinois law and those of the other 49 states plus the District of Columbia").) Plaintiffs' chart, however, belies this conclusion. Even a brief review of this submission reveals that the elements of unjust enrichment vary across jurisdictions (*see, e.g.,* R. 293-7, Ex. 6, at 1-4 (setting forth non-identical elements of unjust enrichment under the state laws of Alaska, Arizona, Arkansas, California, Colorado, and Connecticut)). As the Seventh Circuit has explained in the context of a nationwide class based on a novel negligence claim, nuance in the law is important and must be respected:

> If one instruction on negligence will serve to instruct the jury on the legal standard of every state of the United States applicable to a novel claim, implying that the claim despite its controversiality would be decided identically in all 50 states and the District of Columbia, one wonders what the Supreme Court thought it was doing in the *Erie* case when it held that it was unconstitutional for federal courts in diversity cases to apply general common law rather than the common law of the state whose law would apply if the case were being tried in state rather than federal court. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78-80, 58 S. Ct. 817, 822, 82 L. Ed. 1188 (1938). The law of negligence, including subsidiary concepts such as duty of care, foreseeability, and proximate cause, may as the plaintiffs have argued forcefully to us differ among the states only in nuance, though we think not, for a reason discussed later. But nuance can be important, and its significance is suggested by a comparison of differing state pattern instructions on negligence and differing judicial formulations of the meaning of negligence and the subordinate concepts.

*In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1300 (7th Cir. 1995); *see also Castano,* 84 F.3d at 742 ("Given the plaintiffs' burden, a court cannot rely on assurances of counsel that any problems with predominance or superiority can be overcome").

6

Regarding unjust enrichment in particular, several courts have recognized that, while many unjust enrichment claims are based on common law principles identified in the Restatement, *see In re Terazosin Hydrochloride*, 220 F.R.D. 672, 697 n.40 (S.D. Fla. 2004), they nonetheless vary to some extent. *See Lilly v. Ford Motor Co.*, No 00 C 7372, 2002 WL 507126, at *2 (N.D. Ill. Apr. 3, 2002); *see also In re Rhone-Poulenc*, 51 F.3d at 1300 (refusing to certify a class based on the negligence laws of 51 jurisdictions, even though "at some level of generality the law of negligence is one"). Indeed, "unjust enrichment is a tricky type of claim that can have varying interpretations even by courts within the same state, let alone among the fifty states." *In re Sears, Roebuck & Co*, Nos. 05 C 4742, 05 C 2623, 2006 WL 3754823 at *1 n.3 (N.D. Ill. Dec. 18, 2006). More specifically,

> variances exist in state common laws of unjust enrichment. The actual definition of 'unjust enrichment' varies from state to state. Some states do not specify the misconduct necessary to proceed, while others require that the misconduct include dishonesty or fraud. Other states only allow a claim of unjust enrichment when no adequate legal remedy exists. Many states, but not all, permit an equitable defense of unclean hands. Those states that permit a defense of unclean hands vary significantly in the requirements necessary to establish the defense.

*Clay v. American Tobacco Co.*, 188 F.R.D. 483, 501 (S.D. Ill. 1999) (internal citation omitted);[2] *see also In re Baycol Prods. Litig.*, 218 F.R.D. 197, 214 (D. Minn. 2003) (noting that unjust enrichment is a remedy at law in Illinois but an equitable claim in Minnesota).[3]

---

[2] In *Clay*, the district court also analyzed why the variations in 47 different states' civil conspiracy laws rendered a nationwide class action unmanageable. *See Clay v. American Tobacco Co.*, 188 F.R.D. 483, 499 (S.D. Ill. 1999). It concluded that "the individual question of causation predominates over the few common issues and that the civil conspiracy claim is not properly certified as a class." *Id.* Plaintiffs' civil conspiracy claims face the same hurdle here.

[3] Plaintiffs' only cited case to the contrary is non-binding authority that does not provide a meaningful analysis of the issue. *In re Terazonin Hydrochloride*, 220 F.R.D. 672, 697 n.40 (S.D. Fla. 2004).

Like the variation in the states' unjust enrichment laws, "[s]tate consumer-protection laws vary considerably." *In re Bridgestone/Firestone, Inc.*, 288 F.3d at 1012 (further noting that "courts must respect these differences rather than apply one state's law to sales in other states with different rules." (citing *BMW of North Am., Inc. v. Gore*, 517 U.S. 559, 568-73, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996)). For example, state consumer fraud laws differ with regard to several key issues – the type of prohibited conduct, proof of injury-in-fact, available remedies, scienter, statute of limitations, and reliance. *See, e.g., BMW of North Am., Inc.*, 517 U.S. at 570 ("The result is a patchwork of rules representing the diverse policy judgments of lawmakers in 50 states."); *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005) (reversing class certification because state consumer fraud laws vary widely); *In re Prempro*, 230 F.R.D. 555, 564 (E.D. Ark. 2005) ("Both consumer fraud and unfair competition laws of the states differ with regard to the defendant's state of mind"). Moreover, several states' consumer fraud laws require proof or deception or reliance, thus precluding class certification. *See Castano*, 84 F.3d at 759 (claims requiring reliance not susceptible to class treatment); *Szabo,* 249 F.3d at 674 ("But claims for fraud and negligent misrepresentation may depend on who made the representations, where, and on whose behalf."); *see also Nagel,* 217 F.3d at 443 (consumer fraud claims are plaintiff specific and therefore unlikely to have common class issues that predominate).

This lack of unison in the case law would be immaterial, however, if the applicable choice-of-law analysis points to only one state's law. *In re Bridgestone/Firestone*, 288 F.3d at 1015 ("The district judge, well aware of this principle, recognized that uniform law would be essential to class certification. Because plaintiffs' claims rest on state law, the choice-of-law

8

rules come from the state in which the federal court sits."). In diversity cases, a federal court must apply the forum state's choice of law rules in determining the applicable substantive law to apply. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Tanner v. Jupiter Realty Corp.,* 433 F.3d 913, 915-16 (7th Cir. 2006). Illinois follows the Restatement (Second) of Conflicts of Laws and uses the "most significant relationship" test to decide choice-of-law issues. *See Carris v. Marriott Int'l, Inc.,* 466 F.3d 558, 560 (7th Cir. 2006); *Esser v. McIntyre,* 169 Ill.2d 292, 214 Ill.Dec. 693, 661 N.E.2d 1138, 1141 (Ill. 1996).

To determine which state has the most significant relationship, Illinois looks to (1) the principles found in § 6 of Restatement (Second) of Conflict of Laws, and (2) in the a consumer protection case, to the significant contacts identified in §148 of the Restatement. *See Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill.2d 45, 61-62, 316 Ill. Dec. 522, 879 N.E.2d 910 (Ill. 2007) (determining that § 148 of Restatement (Second) of Conflict of Laws governed the choice of law decision in a claim based on consumer fraud and false representations). According to § 148(1) of the Restatement, where a plaintiff relies on a representation in the same state where that representation was made and received, the law of that state applies. *See* Restatement (Second) of Conflicts of Law § 148(1) (1971); *In re Grand Theft Auto Video Game Consumer Litig.*, ___ F.R.D. ___, No. 06 C 1739, 2008 WL 2971526, at *8 (S.D.N.Y. July 30, 2008) (applying Illinois conflicts law). Because Plaintiffs allege that the false representations were the "price at the pumps," which is where consumers received and relied upon these representations, § 148(1) directs that the place of each class member's gas purchase govern that class member's claims. Thus, applying Illinois' choice-of-law rules leads to the application of each state's consumer protection laws. *See In re Bridgestone/Firestone, Inc.*, 288 F.3d at 1017 ("If recovery for breach

9

of warranty or consumer fraud is possible, the injury is decidedly where the *consumer* is located, rather than where the seller maintains its headquarters." (emphasis original)).

As a result, Plaintiffs have failed in their burden of establishing the requirements of commonality, superiority, and predominance under Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3). *Id*. at 1015-17 ("Because these claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable."); *Szabo,* 249 F.3d at 674 ("A nationwide class ... poses serious problems about choice of law, the manageability of the suit, and thus the propriety of class certification"); *cf. Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) ("Reliance on federal law avoids the complications that can plague multi-state classes under state law"). Accordingly, the Court, in its discretion, denies Plaintiffs' Motion for Class Certification.

## CONCLUSION

For these reasons, the Court denies Plaintiffs' Motion For Class Certification pursuant to Federal Rule of Civil Procedure 23 and denies Defendants' Motion to Exclude Plaintiffs' Expert Testimony as moot.

Dated: September 23, 2008

                       **ENTERED**

                       *[signature]*
                       _____
                       **AMY J. ST. EVE**
                       **United States District Judge**