IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL SIEGEL on behalf of himself, and all others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) No. 06 C 0035 |
| SHELL OIL COMPANY, a Delaware corporation, BP CORPORATION NORTH AMERICA, INC., an Indiana corporation, CITGO PETROLEUM CORPORATION, a Delaware corporation, MARATHON OIL COMPANY, an Ohio corporation, and EXXON MOBIL CORPORATION, a New Jersey corporation, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

In his Amended Class Action Complaint, Plaintiff Michael Siegel alleges that Defendants Shell Oil Company, BP Corporation North America, Inc., Citgo Petroleum Corporation, Marathon Oil Company, and Exxon Mobil Corporation are liable under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et. seq.*, for deceptive and unfair practices (Counts I and II). Siegel also brings a common law unjust enrichment claim based on both tort and quasi-contract (Count III) and a common law civil conspiracy claim (Count IV). On September 23, 2008, the Court, in its discretion, denied Siegel's Amended Motion for Class Certification involving Siegel's proposed nationwide classes. (R. 308-1, Mem., Op., & Order.) Before the Court is Siegel's Second Amended Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23. For the following reasons, the

Court, in its discretion, denies Siegel's motion. Further, the Court denies Defendants' Motion to Exclude Plaintiff's Expert Testimony as moot.

## BACKGROUND

In his Amended Class Action Complaint, Siegel alleges that "Defendants possess oligopolistic power and have possessed oligopolistic power throughout the entire class period, i.e., 2000 to the date of judgment, in the crude, refined and gasoline industry ("gas industry"), and have used this power in concert with their co-conspirators to illegally and artificially restrain trade and increase the price of gasoline to consumers by controlling their inventory, production, exports, limiting supply, restricting purchase, zone pricing, falsely advertising the scarceness of gasoline and excessive mark up between gasoline and crude prices." (R. 77-1, Amend. Compl. ¶ 1.) In the present motion for class certification, Siegel maintains that Defendants manipulated the nation's supply of gasoline resulting in Siegel and the proposed class being damaged through paying Defendants' inflated prices for gasoline. (R. 332-1, Pl.'s Second Amend. Mot. Class Cert., ¶ 1.) Siegel further contends that Defendants omitted material information, engaged in unfair practices, and that Defendants were unjustly enriched to the detriment of Siegel and the proposed class as a result of this conduct. (*Id*.) Siegel seeks certification of the following class: "All purchasers who made retail purchases of any Defendants' branded gasoline in Illinois during the period from and including December 2, 2000, through and including September 5, 2008." (*Id.* ¶ 2.)

## LEGAL STANDARD

"[T]he primary purposes of the class-action mechanism" are "judicial economy and efficiency." *Andrews v. Chevy Chase Bank,* 545 F.3d 570, 577 (7th Cir. 2008); *see also*

*Thorogood v. Sears, Roebuck & Co.,* 547 F.3d 742, 744 (7th Cir. 2008) ("The class action is an ingenious device for economizing on the expense of litigation and enabling small claims to be litigated."). To that end, Federal Rule of Civil Procedure 23(a) states that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a); *Oshana v. Coca-Cola Co.,* 472 F.3d 506, 513 (7th Cir. 2006). Failure to meet any of these Rule 23(a) requirements precludes class certification. *See Arreola v. Godinez,* 546 F.3d 788, 797 (7th Cir. 2008).

In addition to satisfying the requirements under Rule 23(a), a party seeking class certification must also establish that the proposed class satisfies one of the requirements set forth in Rule 23(b). *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Arreola,* 546 F.3d at 794. Here, Siegel requests certification of the proposed class pursuant to Rule 23(b)(3), which applies when "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3); *see also Amchem Prods.*, 521 U.S. at 615-16. Under Rule 23(b)(3), if "a few class members' injuries prove to be substantial, they may opt out and litigate independently." *Murray v. GMAC Mortgage Corp.,* 434 F.3d 948, 953 (7th Cir. 2006).

The party seeking class certification has the burden of establishing that certification is

3

proper. *See Oshana,* 472 F.3d at 513. In determining whether a party has carried that burden, a court need not accept all of the complaint's allegations as true. *See Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). Rather, in deciding whether to certify a class, the Court "should make whatever factual and legal inquiries [that] are necessary under Rule 23." *Id.* at 676; *see also General Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (courts may "probe behind the pleadings before coming to rest on the certification question"). Finally, district courts have broad discretion in determining motions for class certification. *See Reiter v. Sonotone Corp.,* 442 U.S. 330, 345, 99 S.Ct. 2326, 2334, 60 L.Ed.2d 931 (1979); *Payton v. County of Carroll,* 473 F.3d 845, 847 (7th Cir. 2007).

## ANALYSIS

The Court turns to Rule 23(b)(3) because it is dispositive.[1] Under Rule 23(b)(3), the Court must determine whether (1) the questions of fact or law common to the class members predominate over questions affecting only the individual class members, and (2) a class action is superior to other available methods of adjudicating plaintiffs' claims. *See Amchem Prods.,* 521 U.S. at 615; *Andrews*, 545 F.3d at 577.

**I.    Predominance**

Here, Defendants maintain that Siegel cannot establish – through common proof – that Defendants' conduct proximately caused harm to each member of the putative class, and thus

---

[1] In their response brief, Defendants do not challenge the numerosity requirement or that there is a common nucleus of operative facts as required under Rule 23(a), and thus any such arguments are waived. *See Steen v. Myers,* 486 F.3d 1017, 1020 (7th Cir. 2007) (absence of discussion in briefs amounts to abandonment of claim). Meanwhile, Defendants' bare-boned adequacy argument is waived. *See White Eagle Coop. Ass'n v. Conner,* 553 F.3d 467, 476 n.6 (7th Cir. 2009) (perfunctory and undeveloped arguments are waived).

Siegel has failed in his burden of establishing that class treatment is appropriate under Rule 23(b)(3). The Court agrees. When determining if a plaintiff has met the predominance requirement, district courts look beyond the pleadings to determine whether the plaintiff's claims are subject to class-wide proof by common evidence. *See Thorogood,* 547 F.3d at 747-48; *Andrews*, 545 F.3d at 577; *Pastor v. State Farm Mut. Auto. Ins. Co.,* 487 F.3d 1042, 1046-47 (7th Cir. 2007); *Hewitt v. Joyce Beverages of Wis., Inc.,* 721 F.2d 625, 628-29 (7th Cir. 1983). In other words, "predominance is concerned with whether the putative named plaintiffs can, through their individualized cases, offer proof on a class-wide basis." *Hyderi v. Washington Mut. Bank, FA,* 235 F.R.D. 390, 398 (N.D. Ill. 2006).

In Counts I and II of his Amended Class Action Complaint, Siegel brings claims under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et. seq.*, for deceptive and unfair practices. In the present motion, Siegel characterizes his deceptive practices claim as a "material omissions" claim and his unfair practices claim as an "unfair conduct" claim. Nevertheless, the elements of a claim under the ICFA are: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce. *See Robinson v. Toyota Motor Credit Corp.,* 201 Ill.2d 403, 417, 266 Ill.Dec. 879, 775 N.E.2d 951 (2002); *Galvan v. Northwestern Mem'l Hosp.,* 382 Ill.App.3d 259, 264, 888 N.E.2d 529, 535, 321 Ill.Dec. 10, 16 (Ill.App. Ct. 2008). Moreover, "a private cause of action under ICFA requires a showing of proximate causation." *Oshana,* 472 F.3d at 514-15; *Avery v. State Farm Mut. Auto. Ins. Co.,* 216 Ill.2d 100, 200, 835 N.E.2d 801, 861, 296 Ill.Dec. 448, 508 (2005) ("Proximate causation is an element of all private

5

causes of action under the Act.").

An Illinois deceptive practices case similar to the present matter involving the advertising of gasoline is instructive. *See Oliveira v. Amoco Oil Co.,* 201 Ill.2d 134, 267 Ill.Dec. 14, 776 N.E.2d 151 (2002). In *Oliveira,* the Supreme Court of Illinois analyzed whether a defendant's gasoline advertisements omitted material facts or were false and misleading under the ICFA and concluded that to establish the proximate cause for deceptive advertising, the plaintiff must show that he was somehow deceived. *See Oliveira,* 201 Ill.2d at 139-40, 155; *see also Shannon v. Boise Cascade Corp.,* 208 Ill.2d 517, 525, 281 Ill.Dec. 845, 805 N.E.2d 213 (2004) ("deceptive advertising cannot be the proximate cause of damages under the Act unless it actually deceives the plaintiff."). As the Seventh Circuit has explained in the context of deceptive practices claims, "a damages claim under the ICFA requires that the plaintiff was deceived in some manner and damaged by the deception." *Oshana,* 472 F.3d at 513-14.

Likewise, to establish a common law claim of unjust enrichment – as alleged in Count III of Siegel's Amended Class Action Complaint – a plaintiff must prove deception by the defendant. *See Oshana,* 472 F.3d at 515; *Bober v. Glaxo Wellcome PLC,* 246 F.3d 934, 943 (7th Cir. 2001) ("in the absence of any deception on the part of the defendants, the requisite violation of 'fundamental principles of justice, equity, and good conscience' is not present.") (citation omitted); *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.,* 131 Ill.2d 145, 160, 137 Ill.Dec. 19, 545 N.E.2d 672 (1989); *see, e.g., In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.,* No. MDL 1703, 2007 WL 4287511, at *9 (N.D. Ill. Dec. 4, 2007).

Here, Siegel's own deposition testimony demonstrates that establishing causation for his ICFA deceptive and unfair practice claims would require the Court to make individual inquiries

into the putative class members' reactions to Defendants' alleged unfair and deceptive conduct. Specifically, at his deposition Siegel stated that no one believed in the gas industry's advertising that explained their profits were not exorbitant and that he, himself, did not personally believe them. (R. 358-1, Defs.' Ex. 1, Siegel Dep., at 170-71.) Siegel further testified that he did not believe the Defendants' statements with respect to disparities between the price of gasoline and the price of crude oil. (*Id.* at 271.) Moreover, Siegel admitted that – although he claims that Defendants' advertising of the price at the gas pump failed to inform consumers that the price was not a fair market price – convenience was his number one factor in purchasing gasoline. (*Id.* at 21, 168.)

Siegel's testimony that Defendants' advertising did not deceive him and that he purchased gasoline based on other considerations – such as convenience – not only undermines the typicality requirement under Rule 23(a),[2] but also illustrates the difficulty in certifying a class of "millions of individuals throughout Illinois during the relevant time period,"[3] who may or may not have been deceived by Defendants' conduct and who may or may not have relied on Defendants' deceptive or unfair practice in purchasing gasoline. In general, the Court would be required to make individual determinations concerning the circumstances surrounding each individual's gasoline purchases to discern whether Defendants conduct proximately caused plaintiff's injuries. As to Siegel's deceptive practices and unjust enrichment claims, for

---

[2] As the Seventh Circuit teaches, "[e]ven though some factual variations may not defeat typicality, the requirement is meant to ensure that the named representative's claims 'have the same essential characteristics as the claims of the class at large.'" *Oshana v. Coca-Cola Co.,* 472 F.3d 506, 514 (7th Cir. 2006) (citations and internal quotations omitted).

[3] *See* R. 333-1, Pl.'s Mem. in Support, at 7.

example, the Court would need to determine whether Defendants deceived each putative class member and whether the individual plaintiff was damaged by the deception. *See In re Sears,* 2007 WL 4287511, at *9 ("it will be necessary to show that each class member purchased the tool and paid the price as a result of defendant's deception."); *see also Barbara's Sales, Inc. v. Intel Corp.,* 227 Ill.2d 45, 76, 316 Ill.Dec. 522, 879 N.E.2d 910 (2007) ("Under *Oliveira* and its progeny, plaintiffs must prove that each and every consumer who seeks redress actually saw and was deceived by the statements in question."). As the Seventh Circuit instructs, "when a separate evidentiary hearing is required for each class member's claim, the aggregate expense may, if each claim is very small, swamp the benefits of class-action treatment." *Pastor,* 487 F.3d at 1047; *see, e.g., Thorogood,* 547 F.3d at 746-48. Such is the case here. *See, e.g., Clark v. Experian Info., Inc.,* 233 F.R.D. 508, 512 (N.D. Ill. 2005) (The nature of the plaintiffs' [ICFA] claims require an individualize person-by-person evaluation of what the potential class members viewed on the defendants' website, the potential class member's understanding of and reliance on this information, and what damages, if any, resulted."). In sum, unlike class actions where a defendant's conduct is standardized and the class plaintiffs' individual reactions to the defendant's conduct are unnecessary in determining liability, *see Murray v. GMAC Mortgage, Corp.,* 434 F.3d 948, 955 (7th Cir. 2006), Siegel's proposed class requires the Court to determine how each plaintiff reacted to Defendants' alleged unfair and deceptive conduct.

Accordingly, Siegel has failed in his burden of establishing that common evidence can be used to prove that each class member relied on Defendants' unfair or deceptive conduct when purchasing gasoline at an allegedly elevated price. Because individual fact issues predominate over common fact issues, the Court denies Siegel's motion for class certification as to his ICFA

8

claims as alleged in Counts I and II of the Amended Class Action Complaint, as well as Siegel's unjust enrichment claim in Count III. *See Thorogood,* 547 F.3d at 747-48.

In Count IV of his Amended Class Action Complaint, Siegel alleges a common law civil conspiracy claim. As the Court previously explained when denying Defendants' Rule 12(c) motion for judgment on the pleadings, a civil conspiracy claim is not a stand-alone tort. (R. 228-1, 1/2/08 Minute Order, at 5.) Instead, the "function of a conspiracy claim is to extend tort liability from the active wrongdoer to wrongdoers who may have only planned, assisted or encouraged the active wrongdoer." *Redelmann v. Claire Sprayway, Inc.,* 375 Ill.App.3d 912, 923, 314 Ill.Dec. 320, 874 N.E.2d 230 (2007). Put differently, "civil conspiracy is not an independent tort but must be premised on the commission of an underlying independent wrong." *De Bouse v. Bayer AG,* 385 Ill.App.3d 812, 829, 324 Ill.Dec. 806, 896 N.E.2d 882 (2008). In fact, in his original class action brief, Siegel admitted that a common law civil conspiracy claim requires an underlying tort. (R. 291-1, Pl.'s Class Cert. Mem., at 32.) Because Siegel has failed to establish the Rule 23(b)(3) predominance requirement for the underlying tort and quasi-contract claims, Siegel cannot establish predominance for his civil conspiracy claim.

## II.     Superiority

Finally, the Court turns to whether a class action is superior to other methods for the adjudication of the proposed class' claims. *See Szabo,* 249 F.3d at 676. In short, the difficulties in managing the plaintiff-specific issues in the proposed class work against Siegel establishing the superiority requirement under Rule 23(b)(3). *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 164, 94 S.Ct. 2140 (1974) (manageability considerations encompass "range of practical problems that may render the class action format inappropriate for a particular suit."); *see also*

Fed.R.Civ.P. 23(b)(3)(D). As the Seventh Circuit explains, although "the need for individual damages determinations does not, in and of itself, require denial of his motion for certification," *see Arreola*, 546 F.3d at 801, "if the class certification only serves to give rise to hundreds or thousands of individual proceedings requiring individually tailored remedies, it is hard to see how common issues predominate or how a class action would be the superior means to adjudicate the claims." *Andrews*, 545 F.3d at 577. Accordingly, Siegel has failed in his burden of establishing the superiority requirement under Rule 23(b)(3).

## CONCLUSION

For these reasons, the Court denies Plaintiff's Second Amended Motion For Class Certification pursuant to Federal Rule of Civil Procedure 23 and denies Defendants' Motion to Exclude Plaintiff's Expert as moot.

Dated: February 23, 2009

                                  **ENTERED**

                              **AMY J. ST. EVE**
                              **United States District Judge**