# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL SIEGEL, on behalf of himself and all other similarly situated, ) ) | |
| Plaintiff, ) ) | |
| v. ) ) ) | Case No. 06 C 0035 |
| SHELL OIL COMPANY, a Delaware corporation, BP CORPORATION NORTH AMERICA, INC., an Indiana corporation, CITGO PETROLEUM CORPORATION, a Delaware corporation, MARATHON OIL COMPANY, an Ohio corporation, and EXXON MOBIL CORPORATION, a New Jersey corporation, ) ) ) ) ) ) ) ) ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

In his five-count Amended Class Action Complaint, Plaintiff Michael Siegel alleges that Defendants Shell Oil Company, BP Corporation North America, Inc., Citgo Petroleum Corporation, Marathon Oil Company, and Exxon Mobil Corporation are liable under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et. seq.*, for deceptive and unfair practices (Counts I and II). Siegel also brings two common law unjust enrichment claims (Counts III and IV) and a common law civil conspiracy claim (Count V). The Court previously denied Siegel's Motion for Class Certification for a national class on September 23, 2008 and Siegel's Second Amended Motion for Class Certification for an Illinois-only class on February 23, 2009. On May 1, 2009, the Court of Appeals for the Seventh Circuit denied Siegel's Federal Rule of Civil Procedure 23(f) Petition for Leave to Appeal the Court's

denial of Siegel's Motion for Class Certification for an Illinois-only class.  Before the Court is Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.  For the following reasons, the Court grants Defendants' summary judgment motion in its entirety.

## BACKGROUND

### I. Northern District of Illinois Local Rule 56.1

When determining summary judgment motions, the Court derives the background facts from the parties' Northern District of Illinois Local Rule 56.1 statements.  Specifically, Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009).  "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)).  In addition, Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that require the denial of summary judgment.  *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008).

The purpose of Rule 56.1 statements is to identify the relevant evidence supporting the material facts, not to make factual or legal arguments.  *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006).  Also, the requirements for responses under Local Rule 56.1 are "not

satisfied by evasive denials that do not fairly meet the substance of the material facts asserted."
*Bordelon,* 233 F.3d at 528. The Court may disregard statements and responses that do not properly cite to the record. *See Cichon v. Exelon Generation Co., L.L.C.,* 401 F.3d 803, 809-10 (7th Cir. 2005); *see also Raymond v. Ameritech Corp.*, 442 F.3d 600, 604 (7th Cir. 2006) ("district courts are entitled to expect strict compliance with Local Rule 56.1"). With these standards in mind, the Court turns to the relevant facts of the case.

## II. Relevant Facts

### A. Parties

Plaintiff Michael Siegel is a citizen of Illinois and a resident of Cook County, Illinois, who purchased gasoline from each of the Defendants' branded gasoline stations for end use. (R. 380-1, Defs.' Rule 56.1 Stmt. Facts. ¶ 1.) Shell Oil Company is a Delaware corporation and BP Corporation North America, Inc. is an Indiana corporation that advertises the sale of gasoline in the State of Illinois. (*Id*. ¶¶ 2, 3.) Citgo Petroleum Corporation is a Delaware corporation that engages in advertising of gasoline in Illinois. (*Id*. ¶ 6.) Marathon Oil Company is an Ohio corporation and Exxon Mobil Corporation is a New Jersey corporation that through its subsidiary has sold, marketed, advertised, and distributed gasoline to consumers in Illinois. (*Id*. ¶¶ 4, 5.) Defendants are five of the top eight vertically integrated oil companies operating within the United States. (R. 393-1, Pl.'s Rule 56.1 Add'l Stmt. Facts ¶ 13; R. 249-2, Mem. in Support of Class Cert., at 2.)

### B. Siegel's Allegations

In his Amended Class Action Complaint, Siegel alleges that he purchased Defendants' branded gasoline in Illinois from 2000 until he filed this lawsuit. (*Id*. ¶ 2.) He further alleges

3

that Defendants artificially raised the price of gasoline and that he was damaged by paying higher gasoline prices than he should have paid. (*Id.* ¶ 1.) Specifically, Siegel contends that he purchased Defendants' gasoline at the price listed at the pump and that he bought gasoline from Defendants out of necessity. (*Id*. ¶¶ 3, 4.) Siegel, however, also testified that other factors affected his gasoline purchases, including price, location, quality of gasoline, convenience, and environmental concerns. (*Id*. ¶ 5; Defs.' Stmt. Facts ¶¶ 25, 30.) In addition, Siegel argues that Defendants – all vertically integrated oil companies – conspired to manipulate the nation's gasoline supply and that this conspiracy resulted in "the artificial, unreasonable and/or hyper-inflation of gas prices." (Pl.'s Stmt. Facts ¶¶ 9, 11.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Estate of Suskovich v. Anthem Health Plans of Va., Inc.,* 553 F.3d 559, 563 (7th Cir. 2009) (quoting Fed. R. Civ. P 56(c)). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the

adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted); *see also* Fed.R.Civ.P. 56(e)(2) (requiring adverse party to "set out specific facts"). At summary judgment, the "court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *National Athletic Sportswear, Inc. v. Westfield Ins. Co.,* 528 F.3d 508, 512 (7th Cir. 2008).

## ANALYSIS

I.  **Illinois Consumer Fraud and Deceptive Business Practices Act Claims**

In Counts I and II of his Amended Class Action Complaint, Siegel brings claims under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA" or the "Act"), 815 ILCS 505/1, *et. seq.*, for deceptive and unfair practices. The Illinois "Consumer Fraud Act is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.,* 201 Ill.2d 403, 416-17, 266 Ill.Dec. 879, 775 N.E.2d 951 (2002). The elements of a claim under the ICFA are: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce. *See id.* at 417; *see also Rickher v. Home Depot, Inc.,* 535 F.3d 661, 665 (7th Cir. 2008). In addition, "a private cause of action under ICFA requires a showing of proximate causation." *Oshana v. Coca-Cola Co.,* 472 F.3d 506, 514-15 (7th Cir. 2006); *Avery v. State Farm Mut. Auto. Ins. Co.,* 216 Ill.2d 100, 200, 296 Ill.Dec. 448, 835 N.E.2d 801 (2005) ("Proximate causation is an element of all private causes of action under the Act."). The

5

proximate causation requirement applies to both misrepresentation and omission claims under the ICFA. *See Avery*, 216 Ill.2d at 202; *see also Schrott v. Bristol-Myers-Squibb Co.,* 403 F.3d 944-45 (7th Cir. 2005).

    A.    **Deceptive Practices – Count I**

In the context of deceptive practices claims, "a damages claim under the ICFA requires that the plaintiff was deceived in some manner and damaged by the deception." *Oshana,* 472 F.3d at 513-14. As such, "in a case alleging deception under the Act, it is not possible for a plaintiff to establish proximate causation unless the plaintiff can show that he or she was 'in some manner, deceived,' by the misrepresentation." *Avery,* 216 Ill.2d at 200 (quoting *Oliveira v. Amoco Oil Co.,* 201 Ill.2d 134, 155, 267 Ill.Dec. 14, 776 N.E.2d 151 (2002)); *see also Price v. Philip Morris, Inc.,* 219 Ill.2d 182, 269, 302 Ill.Dec. 1, 848 N.E.2d 1 (2005) ("In *Oliveira*, this court equated cause-in-fact with deception.").

Here, Siegel cannot establish that Defendants' conduct proximately caused his damages because he testified at his deposition that he did not believe Defendants' advertising, which Siegel claims rationalized why Defendants' gasoline prices were not exorbitant. (Defs.' Stmt. Facts ¶ 15; Pl.'s Dep., at 170-71.) Instead, Siegel thought Defendants' advertising was self-serving. (*Id.*) Siegel also testified that he did not make his gasoline purchasing decisions based on anything he read in the newspaper or advertisements, which, again, allegedly contained deceptive information. (*Id*. ¶ 36; Pl.'s Dep., at 253.) Siegel further testified that he did not believe Defendants' statements regarding their refineries, pipelines, mergers, supply, or storage, nor did he believe Defendants' statements about the disparities between the price of gasoline and the price of crude oil. (*Id*. ¶¶ 16; Pl.'s Dep., at 271.) In fact, he testified that he did not believe

6

any misrepresentations or omissions concerning gasoline shortages. (*Id*. ¶ 19; Pl.'s Dep., at 287.) Furthermore, Siegel testified that he did not believe any of the statements Defendants' representatives made and that as early as 2000 there was a "tsunami of information" publically available about Defendants' purported manipulation of gasoline prices. (*Id*. ¶¶ 21, 22; Pl.'s Dep., at 254-56.)

In short, Siegel admits that Defendants' alleged misrepresentations or omissions, namely, that Defendants failed to disclose that they had conspired to artificially inflate the price of gasoline, did not deceive him. *See Avery,* 216 Ill.2d at 200 (plaintiff "must establish that he was deceived by [defendant's] representations or omissions in order to prove his claim"); *see also Price,* 219 Ill.2d at 269 ("members of the class must have actually been deceived in some manner by the defendant's alleged misrepresentations of fact."). Because there are no genuine issues of material fact for trial that Defendants' acts or omissions deceived Siegel, his ICFA claim based on Defendants' purported deceptive practices fails. *See Mulligan v. QVC, Inc.,* 382 Ill.App.3d 620, 630, 321 Ill.Dec. 257, 888 N.E.2d 1190 (2008) ("lack of proximate cause may be determined by the court as a matter of law where there is no genuine issue of material fact or only one conclusion is clearly evident."). Thus, the Court grants Defendants' summary judgment motion as to Siegel's deceptive practices claim as alleged in Count I of the Amended Class Action Complaint.

**B.     Unfair Practices – Count II**

Next, Siegel brings an unfair practices claim pursuant to the ICFA. Along with the elements of an ICFA claim – as discussed above – courts consider the following factors when determining if a practice is unfair under the ICFA: "(1) whether the practice offends public

7

policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." *Robinson,* 201 Ill.2d at 417-18; *see also Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.,* 536 F.3d 663, 669 (7th Cir. 2008). "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Rickher,* 535 F.3d at 665 (citations omitted). As with deceptive practice claims, proximate cause is an element of an unfair practice claim under the Act. *See Avery,* 216 Ill.2d at 200; *see also Galvan v. Northwestern Mem. Hosp.,* 382 Ill.App.3d 259, 264, 321 Ill.Dec. 10, 888 N.E.2d 529 (2008).

Siegel maintains that during the relevant time period, Defendants made record-breaking profits because Defendants charged artificially inflated prices for their branded gasoline. As the Supreme Court of Illinois instructs, however, "charging an unconscionably high price generally is insufficient to establish a claim of unfairness." *Robinson,* 201 Ill.2d at 418. Instead, the "defendant's conduct must violate public policy, be so oppressive as to leave the consumer with little alternative except to submit to it, and injure the consumer." *Id.; see also Galvin,* 382 Ill.App.3d at 265.

Here, Siegel testified that he purchased gasoline from non-defendants – such as Sam's Club, Kwikstop, Conoco, Clark, Phillips, and Costco – during the relevant time period. (Defs.' Stmt. Facts ¶ 39, Pl.'s Dep., at 25-26, 63-6, Ex. N, Amend. Resp. to Interrog. No. 5; R. 393-1, Pl.'s Resp. ¶ 39.) Siegel's own testimony demonstrates that he could – and did – go elsewhere to buy gasoline, including purchasing gasoline from non-integrated gasoline suppliers. As such, "there is an absence of the type of oppressiveness and lack of meaningful choice necessary to

8

establish unfairness." *Robinson,* 201 Ill.2d at 419-20; *see also Saunders v. Michigan Ave. Nat'l Bank,* 278 Ill.App.3d 307, 313, 214 Ill.Dec. 1036, 662 N.E.2d 602 (1996) (conduct must "be so oppressive as to leave the consumer with little alternative but to submit").

Moreover, not only did Siegel have the opportunity to buy gasoline at other gas stations, but he also testified that many factors affected his gasoline purchases, including necessity, price, location, quality of gasoline, convenience, and environmental concerns. Therefore, Siegel's testimony that he purchased gasoline for many different reasons undermines any notion that Defendants' conduct caused him to purchase Defendants' "artificially inflated" gasoline in the first instance. *See Schrott,* 403 F.3d at 945 (plaintiff must show causal link existed between defendant's conduct and damages). In fact, Siegel testified that he did not change his gasoline purchasing habits after he learned about Defendants' purported manipulation of gasoline prices or since he filed the original complaint in this matter. (Defs.' Stmt. Facts ¶ 40.) As such, Siegel has failed to set forth sufficient evidence creating a genuine issue of material fact that "but for" Defendants' unfair conduct, he would not have purchased Defendants' gasoline. *See Mulligan,* 382 Ill.App.3d at 630-31; *see also Price,* 219 Ill.2d at 269 ("the relevant inquiry is whether the harm would have occurred absent the defendant's conduct."). The Court thereby grants Defendants' summary judgment motion as to Siegel's unfair practices claim as alleged in Count II of the Amended Class Action Complaint.

## II.     Unjust Enrichment – Counts III and IV

Next, Siegel alleges two unjust enrichment claims under Illinois common law. "The doctrine of unjust enrichment underlies a number of legal and equitable actions and remedies." *Martis v. Grinnell Mut. Reinsurance Co.,* 388 Ill.App.3d 1017, 1024, 329 Ill.Dec. 82 905 N.E.2d

920 (2009). To establish an unjust enrichment claim under Illinois common law, a plaintiff must show: (1) the defendant has "unjustly retained a benefit to the plaintiff's detriment" and (2) the defendant's "retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.,* 131 Ill.2d 145, 160, 137 Ill.Dec. 19, 545 N.E.2d 672 (1989). "For a cause of action based on a theory of unjust enrichment to exist, there must be an independent basis that establishes a duty on the part of the defendant to act and the defendant must have failed to abide by that duty." *Martis,* 388 Ill.App.3d at 1925. In other words, unjust enrichment "is not a separate cause of action that, standing alone, would justify an action for recovery." *Mulligan v. QVC, Inc.,* 382 Ill.App.3d 620, 631, 321 Ill.Dec. 257, 888 N.E.2d 1190 (2008). "Rather, it is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence, and may be redressed by a cause of action based upon that improper conduct." *Martis,* 388 Ill.App.3d at 1024-25.

Siegel brings two unjust enrichment claims – one based on Defendants' unlawful conduct under the ICFA and the other based on the equitable concepts of contract implied-in-law and contract implied-in-fact. (*See* R. 392-1, Pl.'s Resp. Brief, at 11; R. 77-1, Amend. Class Action Compl. ¶¶ 81-85, 86-93.) Because Siegel has not established a private cause of action under the ICFA, unjust enrichment cannot serve as the basis for liability under his claim as alleged in Count III of the Amended Class Action Complaint. *See Mulligan*, 382 Ill.App.3d at 631; *see also Martis,* 388 Ill.App.3d at 1025 (when underlying claim is deficient, unjust enrichment claim must be dismissed); *Trujillo v. Apple Computer, Inc.,* 581 F.Supp.2d 935, 941 (N.D. Ill. 2008) (based on district court's dismissal of underlying claims, plaintiff not entitled to any remedies

under theory of unjust enrichment). The Court thus turns to Siegel's second unjust enrichment claim based on a contract implied-in-law and contract implied-in-fact. *See Gary-Wheaton Bank v. Burt,* 104 Ill.App.3d 767, 775, 60 Ill.Dec. 518, 433 N.E.2d 315 (1982) (contract implied-in-fact and contract implied-in-law based on quantum meruit or unjust enrichment).

"In an action for 'quasi-contract' (or, contract implied in law), a plaintiff asks the court to remedy the fact that the defendant was 'unjustly enriched' by imposing a contract." *Village of Bloomingdale v. CDG Enter. Inc.,* 196 Ill.2d 484, 500, 256 Ill.Dec. 848, 752 N.E.2d 1090 (2001). "A quasi-contract exists independent of any agreement or consent of the parties" and is "an obligation created by law." *Id.* (quoting *Steinberg v. Chicago Med. Sch.,* 69 Ill.2d 320, 334, 13 Ill.Dec. 699, 371 N.E.2d 634 (1977)). On the other hand, a "contract implied in fact is one in which a contractual duty is imposed by a promissory expression which may be inferred from the facts and circumstances and the expressions on the part of the promisor which show an intention to be bound." *Kohlenbrener v. North Suburban Clinic, Ltd.,* 356 Ill.App.3d 414, 419, 292 Ill.Dec. 422, 826 N.E.2d 563 (2005). More specifically, an "implied-in-fact contract may be found by examination of the acts of the parties even in the absence of any express statement of specific agreement regarding the details of the contractual relationship." *Id.* "Whether an implied-in-fact contract exists is a threshold question of law." *Wood v. Wabash County,* 309 Ill.App.3d 725, 728, 243 Ill.Dec. 107, 722 N.E.2d 1176 (1999).

Siegel does not develop his argument that there is a contract implied-in-law – outside of his unjust enrichment claims based on Defendants' legal obligations under the ICFA. Instead, he argues that he purchased gasoline from Defendants at the price stated on the gasoline pump and that this conduct forms the terms of a contract implied-in-fact. Under Illinois law, however, a

contract implied-in-fact must contain all of the elements of an express contract, along with a mutual intent to contract. *See Nissan N. Am., Inc. v. Jim M'Lady Oldsmobile, Inc.,* 486 F.3d 989, 996 (7th Cir. 2007) (citing *Brody v. Finch Univ. of Health Sciences/The Chicago Med. Sch.,* 298 Ill.App.3d 146, 154, 232 Ill.Dec. 419, 698 N.E.2d 257 (1998)). "The elements of a contract are an offer, a strictly conforming acceptance to the offer, and supporting consideration." *Brody,* 298 Ill.App.3d at 154.

Instead of setting forth evidence and legal arguments showing the elements of the parties' contract implied-in-fact, Siegel argues that "[a] reasonable and/or free market price and compliance with applicable law, including ICFA, are terms implied in the price and purchase." (Pl.'s Resp. Brief, at 12.) Siegel further quotes the following language from a Northern District of Illinois case: "In the context of provision of services, an implied contract is formed if the party who provided the services can show that they were performed under circumstances where the recipient would be expected to pay for the services." *Marcatante v. City of Chicago,* No. 06 C 0328, 2008 WL 905160, at *5 (N.D. Ill. Mar. 31, 2008) (citing *Ekl v. Knecht,* 223 Ill.App.3d 234, 165 Ill.Dec. 760, 585 N.E.2d 156 (Ill. 1991)).

Based on his these assertions, Siegel's argument that a contract implied-in-fact existed between the parties is factually and legally undeveloped.[1] *See Rawoof v. Texor Petroleum Co., Inc.*, 521 F.3d 750, 758 (7th Cir. 2008) (district courts need not scour the record to find evidence

---

[1] Siegel presents expert testimony and his expert's affidavit in support of his opposition to summary judgment. The expert's analysis, however, does not support the fact that Defendants' conduct damaged Siegel because his expert's analysis did not determine injury or calculate damages specific to Siegel. (R. 402-1, Ex. 1, Moors Dep., at 284-87.) Instead, the expert focused on Defendants' profits due to the alleged manipulation. (Moors Dep., at 75-77, 211-12; R. 390-2, Ex. A, Moors Aff. ¶¶ 7, 8, 16, 19.)

supporting party's burden of production). In particular, to survive summary judgment, Siegel must present some evidence on matters upon which he bears the burden of proof at trial, including the elements of the alleged contract implied-in-fact. *See Celotex Corp.*, 477 U.S. at 322-23 ("a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."). Also, Siegel's legal argument fails to distinguish how his claim is analogous to the cases he cites concerning implied-in-fact service contracts. *See United States v. Useni,* 516 F.3d 634, 658 (7th Cir. 2008) (to develop legal argument effectively, facts must be bolstered by relevant legal authority). Moreover, Siegel fails to make his argument concerning the parties' contract implied-in-fact in the context of unjust enrichment, namely, he does not argue – let alone establish – that Defendants' retention of benefits to his detriment violated fundamental principles of justice, equity, and good conscience." *See HPI Health Care Servs.,* 131 Ill.2d at 160.

Accordingly, Siegel has failed to establish his unjust enrichment claim based on a contract implied-in-fact, and therefore, the Court grants Defendants' summary judgment motion as to Count IV of Siegel's Amended Class Action Complaint.

## III.    Civil Conspiracy – Count V

Last, Siegel argues that Defendants conspired to manipulate the nation's gasoline supply in "the artificial, unreasonable and/or hyper-inflation of gas prices." Under Illinois law, the "elements of civil conspiracy are: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Fritz v. Johnston,* 209 Ill.2d 302, 317, 282 Ill.Dec. 837, 807 N.E.2d

461 (2004); *see also Borsellino v. Goldman Sachs Group, Inc.,* 477 F.3d 502, 509 (7th Cir. 2007). Under Illinois law, however, civil conspiracy is not an independent tort. *See Thomas v. Fuerst,* 345 Ill.App.3d 929, 936, 281 Ill.Dec. 215, 803 N.Ed.2d 619 (2004). Instead, there must be an independent cause of action underlying a plaintiff's conspiracy claim. *See Thomas,* 345 Ill.App.3d at 936; *Indeck N. Am. Power Fund, L.P. v. Norweb PLC,* 316 Ill.App.3d 416, 432, 249 Ill.Dec. 45, 735 N.E.2d 649 (2000).

Because Siegel has failed to establish his ICFA deceptive and unfair practices claims or his unjust enrichment claims, his conspiracy claim necessarily fails. *See Sassak v. City of Park Ridge,* 431 F.Supp.2d 810, 821 (N.D. Ill. 2006) ("viability of the state law conspiracy claim depends on the existence of independent state law claims."). Moreover, Siegel fails to present any evidence or legal arguments as to the underlying elements of his conspiracy claim. *See Steen v Myers,* 486 F.3d 1017, 1020 (7th Cir. 2007) (absence of discussion in briefs amounts to abandonment of claim). Instead, Siegel merely argues that he "has stated several valid causes of actions" in response to Defendants' argument that there is no underlying independent cause of action to support the conspiracy claim. (Pl.'s Resp. Brief, at 13.) Accordingly, the Court grants Defendants' summary judgment motion as to Siegel's conspiracy claim as alleged in Count V of the Amended Class Action Complaint.

Finally, because the Court grants summary judgment on all five counts of Siegel's Amended Class Action Complaint, the Court need not address Defendants' voluntary payment doctrine arguments. *See Randazzo v. Harris Bank Palatine, N.A.,* 262 F.3d 663, 667-69 (7th Cir. 2001).

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.

**Date:** September 4, 2009

                                      **ENTERED**

                                _____
                                **AMY J. ST. EVE**
                                **United States District Court Judge**